today's cases will be called as previously announced the times will be as allotted to counsel the first case today is number actually before I do that judge sell you can you hear us thank you judge the first case today is number two four dash one two six four United States versus Miguel Pavao Pavao at this time would counsel for the appellant please introduce himself on the record to begin good morning your honors may it please the court Zachary Cunha for the United States judge Rickleman if I could reserve three minutes for rebuttal you may your honors the district court committed two errors below and as a result wrongly concluded that the gun on Mr. Pavao's person should be suppressed first the district court incorrectly determined in direct contravention of this court's precedent that the officer on the scene lacked reasonable suspicion to extend a concededly lawful parcel of the defendant and second the district court erred in finding that defendants conduct and specifically this was a repeated concerning and extensive pattern of reaches for and glances at his waistband combined with some other conduct provided a reasonable suspicion basis for a Terry Pat down risk I'd like to each of those there is no question and I think as a backdrop to this the district court found that the officer officer beam is this testimony was truthful and straightforward all of that evidence is before the court as it conducts de novo review of the suppression decision and all of that establishes that at the time officer beam has made a decision to extend the stop and called for backup he had smelled raw marijuana and he had a small quantity of raw marijuana from the passenger side floor under this court's precedents install and vizier that provides probable cause and ergo provides reasonable suspicion to extend the stop the assessment is a Fourth Amendment assessment it does not turn on the status of marijuana under state law it turns on whether there is evidence confronting the officer of any criminal offense this court has made that clear repeatedly in some ways prefiguring the Supreme Court's decision in Virginia versus more that that is sufficient for the government emphatically did not waive this issue it presented it below repeatedly unequivocally and emphatically and the district court was bound by this court's precedents install it to the you read those as holdings in both case the the part that bears on this case as opposed to alternative extent your honor is concerned about the the reference in a footnote to Maine's decriminalization of marijuana in vizier I do think that that constitutes an alternative holding of the court and was binding on the district court but regardless of whether the court views it that way or otherwise what vizier also unequivocally says as part of its holding is that any offense is sufficient for Fourth Amendment purposes and there is no question for Fourth Amendment purposes that marijuana remains federally prescribed it remains a controlled substance under federal law and therefore furnishes an offense that would support the public was that argument made by the government the original suppression hearing it was your honor the notion that the federal illegality of marijuana remained controlling was argued by my account on at least eight instances I would point the court to Joint Appendix 54 62 70 and 71 those are all from the government's written opposition to the motion to suppress two are in footnotes two are in the body of the text I'd also point to Joint Appendix 159 and 166 that's from the oral argument on the motion the government's position the government again raised the issue in its written submission on reconsideration that's Joint Appendix 184 and again at oral argument on reconsideration Council so I understand your point about the interpretation of the previous cases but I am just curious what your position is at this point in a state in which marijuana has been legalized for several states in the First Circuit of course the government's position is that if an officer pulls over a car for traffic violation and admitted traffic violation and there's any amount of marijuana even trace amount of marijuana in the car that the driver admits to in every single circumstance there's therefore sufficient reason to search the entire car because of the federal law is that is that the government's position well the government's position is that that to the extent and one of the points that I would make is we emphasize in our briefing is that was the situation in Maine it's been the situation in Maine for nearly 50 years since the decriminalization in 1976 which almost perfectly mirrors Rhode Island's decriminalization in 2012 but the facts in that case and you know we've been discussing is that a holding is that an alternative holding is addicted the facts are completely different I mean there's clear indications of driving under the influence which remains a no matter what so I guess I just want to go back just putting aside for a moment if we disagree and what was held previously is that the government's position that in any state where marijuana is legalized if you're pulled over for a traffic violation and there's a trace amount it authorizes the officer to do a search of the entire car well if I could your honor I think I'd like to address that in three ways first those may not be the precise facts of this year but they are almost precisely the same facts as stout which involved a small quantity of marijuana in fact that case involved the smell of burn marijuana rather than raw marijuana I think as a Fourth Amendment principle the government believes yes as long as it remains a federal offense this court's decisions in Smith and in Ryan and the Supreme Court's decision in Virginia versus more teach that that is sufficient for Fourth Amendment probable cause purposes in a Fourth Amendment in a in a federal prosecution to the extent that the court is concerned about some spillover effect for this that the increased decriminalization of marijuana and states is going to lead to a upsurge in arrests or prosecutions I would point out that number one that certainly hasn't happened based on the federal case law the past 50 years in the past decades since Rhode Island has decriminalized this I would also point out that even in Rhode Island when this issue finally reached the Rhode Island Supreme Court the Rhode Island Supreme Court concluded that under their law that this remained relevant in the reasonable suspicion calculus well they said it remained relevant under the totality of the circumstances that would be considered but your argument seems to be that alone is enough that seems like quite two quite different things to me you know a factor in the overall totality of whether searches allowed versus automatic search even if there's only a trace about I think there's a difference your honor I don't know that I would draw the distinction quite that markedly since the Rhode Island Supreme Court was at pains to emphasize that marijuana remains contraband I think the prescription under federal law provides a legal violation a crime that gives the officer reasonable suspicion to extend the stop your position if I understand that logically isn't just that there was reasonable suspicion to extend the stop but if I'm understanding your argument is the officer could have arrested him there was probable cause that's correct your honor I mean and if that's your position then are you arguing did you argue below are you arguing to us that because there was probable cause to make an arrest then the pat-down doesn't need to be justified under Terry it could be just as incident to a lawful arrest I want to be very clear your honor we did not raise search incident or inevitable discovery below I have focused on the probable cause issue because perhaps I'm just conceiving this but I view reasonable suspicion as a lesser standard and probable cause ergo you've met the higher standard you've met the lower one that's why we frank our argument well but the difference then comes to whether there is search incident to arrest well yes and I think on that issue again I want to be very clear for the record we did not raise that issue below and therefore I'm not pressing that issue here with our position is that wouldn't that be the logical conclusion of your position well your honor had we raised search incident or inevitable discovery below I certainly think we would prevail on that basis having being here having not raised those issues I think we have a waiver issue with respect to those arguments and that's why our argument in such chaotic with respect to the Terry Pat down is not focused on whether there was probable cause to make an arrest it's focused on this really significant and concerning pattern of behavior on the part of the defendant at the time he is waiting for backup to at the time the officer is waiting for backup to arrive and once he's taken out of the vehicle I think it's particularly significant given this court's decision I'm sorry your honor no I'm listening decision in DuBose which instructs the district court to take into account the officers experience and training that this is an officer whose ordinary practice he testified would have been to go back to his vehicle and run checks on the driver and he didn't do that because mr. Pavo reached for his waistband almost immediately he did that repeatedly and consistently at the point that he had to be told to stop he continued when he was ordered out of the car he was told to put his hands on his head specifically because of that waistband related conduct which also included what the officer called target glancing which in his experience suggested that there was something at that waistband location and then yet again we're now talking five to seven minutes after the initial interaction at the rear of the vehicle before he is padded down he once again goes for his waistband and his hands have to be physically taken and put on the back of the truck and all of that is a force of conduct that provides reasonable suspicion for a tarry pad in the government's view. You refer to the officer's conduct I'm a little puzzled how do we approach that given that where our inquiry here is not focused on the subjective beliefs of the officer on the other hand I suppose the officer's behavior could offer some degree of corroboration to what the officer is in fact observing I'm not sure how we deal with that. Well your honor the best way I have thought to deal with that is to reconcile what this court has said in DuBose with what this court has said in other cases and that it is unequivocally an objective standard is that one looks at whether a reasonable officer with the training experience or background that is at issue here would have made the that this officer did. I don't know that I have a better answer than that but I think that's the best way for reconciling the tension. Counsel one of the other things that I'm struggling with is I read officer Bemis' testimony and it it's an objective standard as you say but he also seems to make clear that he was actually never afraid and the standard is is there a reasonable basis to believe the person's armed and dangerous and according to the testimony Mr. Pavo complied with every single order from the officer you know he cooperated in every way he put his hands on his head he did whatever the officer asked and officer Bemis and I think this is what the district court concluded was really never afraid so how are we supposed to factor that in since he does need to think that the person is armed and dangerous? I think two responses your honor first of all he emphatically does not need to be afraid so to the extent the district court is focusing on that is the wrong standard is as your honor said whether there's a reasonable basis to believe he's armed and dangerous and at this point may I briefly conclude at this point he has an individual who has committed a drug offense which this court in Harrington and other cases has said the connection between drugs and guns is legendary he has the waistband related conduct he has the fact that while they're waiting he pulls a baggie of marijuana out of his jacket tosses it to the officer and says now you know to search my car I think the point is that all of these circumstances combined and officer Bemis was very clear that he did have concerns about officer safety he doesn't have to be afraid but he did have concerns about officer safety and a reasonable objective officer in those circumstances would conclude that there was a fair probability that the defendant was armed and dangerous. Judge Salia do you have any questions? No thank you. Thank you counsel at this time would counsel for the appellee please introduce himself on the record to begin. May it please the court my name is John Calcagni I'm here today on behalf of the appellee Miguel Cabo. It should come as no surprise that the appellee asked this court to deny the government's appeal and to affirm the decision of the district court suppressing the firearm discovered in this case by a city of Warren police officer who unreasonably extended a routine traffic stop in violation of the Fourth Amendment. The appellee concedes that this was a lawful traffic stop however two minutes two minutes into the stop after the officer made the limited observations of the odor of marijuana the presence of marijuana crumbs on the passenger side floorboard and observing Mr. Cabo's hands to be slightly shaking he immediately decided at that moment that he was going to conduct a search. That was his testimony at the hearing further corroborated by him immediately calling for a secondary officer to assist as at the time it was protocol or policy amongst officers in the city of New York to have an additional officer present when conducting a search. The inquiry for the court is whether or not at that moment when the decision to search was made whether or not there was reasonable suspicion to justify delaying or deviating from the traffic enforcement mission that justified the to begin with. Why should we look to the time he called for backup rather than looking to the time immediately before the search was performed? Your Honor the reason for that... I would think the officer would be able to take into account anything that happened before he actually performed the search. Your Honor what the court needs to do when looking at the facts is determine the point in time where the officer deviated from the initial mission that justified the stop in the first place. The teachings of Rodriguez suggest that the duration in scope of any search or stop is to be limited in scope by its initial intended purpose. This officer stopped the vehicle for the perceived infraction. Of course at that point in time he asked Mr. Cabo for his documentation and rather than running the checks on that documentation and issuing the citation he stopped in his own tracks, continued to maintain his presence at the side of Mr. Cabo's vehicle and called for backup at this point in his own testimony indicating that he made a decision to search. He further testified that in encountering any motorist in the field that if he ever detected the odor of assuming that the occupants of the vehicle didn't possess and present a medical marijuana card that was it was always his practice to then search to determine if the motorist possessed a decriminalized amount that is an ounce or less or under state law a criminal amount an amount exceeding one ounce. So if we if we let's let's assume we limit our inquiry to the point in time that you suggest our inquiry should begin. At that point after he had stopped and after he had smelled the marijuana and then observed some raw marijuana in the car didn't there exist reasonable suspicion indeed probable cause that there was a violation of federal law criminal law? That's a trick question and I'll tell you why. On its face marijuana remains a schedule one control substance. There's no denying that. On its face possession of marijuana is a violation of federal law but we're dealing with a city police officer charged with enforcing the laws of the state of Rhode Island. Let's take that a step at a time. I think in response to what you characterize as a trick question your answer is yes. Yes. So then my next question is is given that the officer had observed in front of him in the car a violation of federal criminal law what authority is there to say that he could not at that point detained for a search based on the reasonable suspicion that he observed a violation of federal criminal law? And I understand he's not if he were a DEA agent DEA agent could he have done this search? I think if he was a DEA agent ferreting out violations of federal law he may have been able to do the search. What doubt do you have? Well your honor we have to examine the fact that the facts and circumstances of this case must be analyzed in the context of the decriminalization. Otherwise we run into a federalism problem the silver platter doctrine issue that I raised in my brief where you have a direct conflict between the state laws and the states have the police power to regulate and set forth what their criminal laws are going to be and we have a direct conflict in the way that the federal government is enforcing its laws with regard to marijuana and no one said it best than Justice Thomas in his in the akimbo statement that I referenced in my memo. Sure do you have any authority that says that a state police officer law enforcement official cannot cite as probable cause for an arrest or detention the violation of federal law? I can't offer you a case your honor this is the first time that this court is being asked to address the issue. How about any court? Well I think that a number of courts that have addressed the odor of marijuana in the wake of decriminalization as it relates to criminal procedure and probable cause and reasonable suspicion have highlighted the fact that the analysis has changed. Now if we simply view it through the prism of the federal law it takes us right back to the holding installer that the government relies on in this case but to do that is to ignore the evolution of the law as we know it. Nearly 40 states have decriminalized marijuana the federal government in our Congress has yet to remove marijuana from the Controlled Substances Act that that's a fact but there has been guidance from the government as to how that laws that law is to be enforced permitting the states to operate in the manner upon which they are. So I think if I'm following correctly your argument requires that we reject the statements that the prosecution cites in both Stoller and Vizio. I'm not asking the court to reject them I'm asking the court to recontextualize them considering the major changes that have affected the majority of states. What's the difference between rejecting them and recontextualizing them? If you were to reject those decisions you would have to issue a ruling that the odor of marijuana is no longer a consideration and I don't believe that that's in it that that comports with many of the state court decisions that I've cited including the state of Rhode Island as my brother referenced State v. Lee. A case that I had the ability to handle but I will suggest this marijuana remains a factor and if you look at simply the facts of this case just the facts of this case the odor of marijuana and the crumbs on the floor those two facts do not rise to reasonable suspicion to believe that Mr. Faber was in possession of a criminal amount of marijuana as would be set forth under Rhode Island law an amount to exceed one ounce. But the court must consider the wave of change that's been affecting this country. If it doesn't it permits this conflict to remain. It also permits this silver platter doctrine problem that I referenced in my memo thereby allowing state and local law enforcement officers to circumvent the state legislature and the changing marijuana laws that exist at the state level by turning cases over to the federal government and that creates a fundamental problem of a conflict between the state and federal law. Yes in a variety of areas firearms cases for example for years have been turned over by state police and local police to federal authorities because the federal laws on firearm possession and use are stricter and more wide-ranging. No one has ever seen a criminal procedural or constitutional problem with that conduct. Why is this different? I think that to distinguish the firearms laws at least I'm not aware of any direct policies that have come from Congress or other political leaders in this country who have directed agencies such as the Department of Justice to relax their enforcement policies as we have seen and read about as they pertain to marijuana laws which have enabled the states to decriminalize in some instances legalize or recreationalize the use the possession and the growing of marijuana but for that federal government policy which is well known the states would not be able to act in the manner upon which they are. In the context of firearms offenses I'm not aware of any liberalization or guidance from the federal government as it pertains to the You have an alternative argument I believe that the even if the officer was justified in detaining your client based on the discovery of marijuana that he wasn't justified in doing the pat down search. That's correct and there was some discussion earlier about that Justice Rickleman brought up the fact that officer Demas in his own testimony did not fear for his own safety and while that was his subjective feeling my brother's correct it is an objective standard. Let me ask you let me ask you about that because I read Demas as saying that he forewent acting in the way he normally would have but for his concern about the reaching. He did say that. So he he was concerned when he saw the reaching for the waistband and concerned enough that he changed his procedure from what he would have done in a normal stop. That's correct your So just focusing on his subjective state of mind as reflected in his testimony he characterized him having a concern at not knowing what Mr. Papo was reaching at or why but did indicate that at no point was he in fear for his safety. Returning back to the applicable objective standard the totality of the circumstances would a reasonable law for an officer have felt for his or her included that a reasonable officer would not have. Well what what about an officer stopped someone on the side of the road he sees them reaching towards the waistband multiple times not just once. He asked he instructs the person to stop doing it and notwithstanding that instruction the person does it again and then the person glances down there as well. Why isn't that enough for an officer to worry that there's a gun in the waistband? Well I think that those are factors that should absolutely be taken into consideration and whether those alone would cause a reasonable officer to fear is is a fact-based determination but there are more factors here that can't be ignored such as Mr. Papo's overall cooperation. But he didn't cooperate on the crucial thing which is stop reaching for your waistband. Understanding that he continued to reach for his waistband, Judge McElroy concluded that that gesture was not done in a threatening manner. That there's no reason to suspect that Papo had any weapons on his possession. There was no indication in his criminal background then known to the officer which would give rise to any suspicions that he was involved had a violent criminal past or possession of weapons on that particular occasion. But the counsel when we're looking at the specific facts and whether they amount to enough to justify a frisk, that's a legal question that we reviewed de novo correct? Based on the facts as found by the district court? That's correct. The application. The application. So I guess my question similar to what Judge Kaya is asking you is a reasonable officer sees someone repeatedly reaching for their waistband or target glancing as the term is apparently and as Judge Kaya mentioned the officer's instruction don't do that. Don't keep reaching for your waistband and he continues to do that. Why is that not enough from an objective standpoint for a reasonable officer to say I'm concerned about what may be there and officer Bemis said he didn't know what it was but he said it could be either contraband or a weapon. Why is that not enough? Because there were many among many other factors presented by this particular case and the totality of the circumstances requirement implores upon the court to consider all of the intended factors. I recognize that the constant gesture posed some concern for the officer but that's simply one factor to be taken into consideration combined with the many others that are all itemized in Judge McElroy's decision. She considered the totality and concluded that an objective officer would not have feared for their safety and we ask that you do the same. But we review that de novo so we don't give deference to her ultimate conclusion, correct? That's correct. Subject to any further questions, I'm almost out of time. Judge Selle, any further questions? No, I'm content. Thank you, counsel. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record. He has a three-minute rebuttal. Thank you. Zachary Cunha for the government. Three very brief points, Your Honor. First, to the extent that there's some concern that this is the federalization of marijuana prosecution, of course it goes without saying that this is not a marijuana prosecution. It's a prosecution for a firearms offense. And to Judge Keada's question regarding whether or not it's relevant that this is a federal violation observed by a state law enforcement officer, I think this court has repeatedly suggested that that is not relevant. If you look at this court's decision in Smith, that's the state law enforcement officer that violates federal law but not state law. That's held sufficient for Fourth Amendment purposes. If you look at Stala and Bazier, the facts of those cases both involve arrests by state law enforcement officers. And if you look at this court's decision in Ryan, where an arrest for driving under the influence is made by an officer who's outside the scope of his jurisdiction to affect an arrest, that still doesn't matter for Fourth Amendment purposes. Counsel, how do you respond though to Mr. Pavo's attorney's argument that this really does create quite a conflict between state and federal law? Again, following the logic of your argument to its conclusion, it would suggest that not only could somebody's car now be searched, but actually they could be searched. There could be a frisk done in any state where marijuana is legal, where a small amount is found in a car. And so the person is now not only having a car search, but their own, you know, physical pat-down conducted while they've acted consistent with state law. They followed state law. Why doesn't that present a conflict that we need to look at carefully? Two points. One, again, I think our point is that the court has looked at that and that's been the law in this circuit for almost 50 years. And to the point that there are more states now that have decriminalized than were the case then, I think, you know, one response to that is if you look at my brother's argument that the federal government has in some ways restricted the enforcement of marijuana laws consistent with that liberalization, this court has decided in Bilodeau and most recently in Saroy three weeks ago, in an area where there is a direct congressional restriction on the Department of Justice's enforcement of marijuana laws where they impact state medical marijuana, which are not an issue here. And this court has ultimately concluded that if there is a freestanding crime, that that does not apply. And so I would suggest in this much more limited circumstance that there's a concern that state officers are going to make an arrest and attempt to convince a local United States attorney to take that case federally. But, Counsel, Saroy, which is a case I'm familiar with, the crime was that the actual state marijuana laws were being violated. That the person was not acting consistent with the laws that the state had passed. And that's, you know, again, there aren't facts to indicate that here, because what the officer originally saw, as Officer Bemis testified, he had no idea what the quantity was. If I can briefly respond, Your Honor? Yes. I think, again, that's at the extremity when we're talking about a federal prosecution. Here, we're clearly not talking about prosecuting Mr. Pavo for a marijuana offense on the federal side of the ledger. And if we're talking about the question of reasonable suspicion to extend and inquire further, whether it's for safety, given Mr. Pavo's avowed swerving across lanes and the smell of marijuana or otherwise, there's reasonable suspicion to extend the stop. Per Judge Selya's question, you assess that at the moment that the decision is made. If there are no further questions, we'd rest on our brief and ask that the Court recourse. Thank you. Thank you. Thank you, Counsel. That concludes argument in this case.